IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC T. DOWNS               *
        Plaintiff,
    v.                      *   CIVIL ACTION NO. DKC-10-964

JAMES GILL                  *
        Defendant.
                            ***

## **MEMORANDUM OPINION**

Eric T. Downs ("Downs") is an inmate confined at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). On April 19, 2010, he filed this action alleging that on August 19, 2008, a correctional officer conducted a random search of his cell and found approximately 50 to 60 sheets of paper made into gambling tickets and a template to be used on a copier to manufacture the tickets. The items were found in a brown envelope with Downs's name in a top desk drawer. Downs was cited with rule infractions for possession of gambling paraphernalia, conducting a gambling pool, and possession of unauthorized material. The Superintendent of Industries ("SOI") confirmed that the papers were copied off a UNICOR photocopier. Downs claims that a Unit Disciplinary Committee ("UDC") found that he had committed prohibited acts and sanctioned him with a 30-day loss of commissary. He states that the SOI requested that he be removed from UNICOR based upon the prohibited acts.

Downs complains that he was not afforded the minimum requirements of due process with regard to the disciplinary process because he did not receive notice of the incident report "within 24 hours of staff becoming aware of a prisons infraction conduct" and because the UDC hearing was not conducted "within 72 hours after issuance of the incident report." He further alleges that the SOI failed to timely exercise his authority to remove him from his UNICOR job and that the SOI's actions placed him in double jeopardy as he was "prosecuted" twice for the

same offense. He asks to be fully reinstated to his UNICOR Federal Prison Industries ("FPI") factory position without "suffering any loss of pay or longevity." ECF No. 1.

Defendant has filed Motions to Dismiss or, in the Alternative, for Summary Judgment[1] and a Reply. ECF Nos. 11, 15 & 26. Plaintiff has filed a Motion for Summary Judgment,[2] an Opposition response and a Motion and Amended Motion of Objection to the Reply.[3] ECF Nos. 13, 21, 27 & 28. For reasons to follow, oral hearing is not warranted in this case. *See* Local Rule 105.6. (D. Md.). Judgment shall be entered in favor of Defendant.

In reliance on Downs's base file and the Declaration of the current SOI, the following information has been provided by Defendant: On August 19, 2008, Officer D. Cram conducted a random search of Downs' FCI-Cumberland cell. He found approximately 50-60 gambling slips and a template for making the slips in the top desk drawer in a brown envelope with Downs's registry number, name, and address. Downs was charged with violations of Code 305, 325, and 326. He received notice of the charges on August 20, 2008. That same date he was advised of his right to remain silent during the disciplinary process, but waived the right. He did not request the presence of witnesses at the hearing. On August 25, 2008, the UDC convened to hear the disciplinary charges against Downs. The committee reviewed the incident report, the gambling slips and template, along with Downs's statement that "on the weekend, guys play fantasy football. I wasn't in it this week. It's football season, that's what they do. I'm not saying I

---

[1] Defendant resubmitted his original Motion to Dismiss or, in the Alternative, for Summary Judgment (*see* ECF No. 11) as a corrected copy due to the filing of illegible exhibits in his first dispositive filing. *See* ECF Nos. 14 & 18.

[2] Downs argues that as Defendant failed to file a timely response, judgment should be entered in his favor. ECF No. 13.

[3] In his Motion and Amended Motion of Objection, Downs takes issue with Defendant's Reply, alleging that Defendant has repeatedly sought extensions to "obtain more information" but has in fact filed documents which fail to provide the court with any information not previously provided. ECF Nos. 27 & 28. Downs also accuses Defendant of misleading the court as to the supporting facts of his double jeopardy argument. ECF No. 27.

don't gamble. I gamble." ECF No. 15, Ex. 1 at Attachment C. The UDC found Downs committed the prohibited acts as charged and sanctioned him with the thirty-day loss of commissary privileges.

Downs appealed the UDC decision to the Regional Office, arguing that his due process rights were violated and challenging the timeliness of the hearing. *Id*., Ex. 1 at Attachment D. The Regional Office held that the most appropriate charge was the possession of gambling paraphernalia and Downs's disciplinary record was adjusted to reflect this modification. It also concluded that: the disciplinary procedures were substantially followed; the evidenced supported the UDC's findings; and the sanctions imposed were appropriate for the offense.

On August 27, 2008, Downs's employment at FPI was terminated. The SOI e-mailed the UNICOR Factory Manager on that date requesting that Downs be removed from his UNICOR job in accordance with U.S. Bureau of Prisons ("BOP") Program Statement 8120.02.[4] The SOI explains that an inmate may be removed from industries work in cooperation with the Unit Team. ECF No. 15, Ex. 2 at Gill Decl.

On September 5, 2008, Downs requested to be reinstated to his UNICOR job. *Id*., Ex. 2 at Attachment B. The SOI explained to Downs that he had the authority to refuse an FPI assignment to an inmate who in his judgment constituted a threat to the orderly and safe operation of the FPI factory. Given Downs possession of gambling paraphernalia, the SOI found that Downs's employment in UNICOR threatened the safe and orderly operation of the FPI factory. In reaching this decision, the SOI noted that he had considered information which showed that the gambling papers confiscated from Downs had been copied off a UNICOR copy machine.

---

[4] Under Program Statement 8120.02, "Work Programs for Inmates-FPI," Chapter 4, Section 1, "Each inmate assigned to FPI shall comply with all work standards pertaining to his or her work assignment. Adherence to the standards should be considered in evaluating the inmate's work performance and documented in individual hiring, retention, and promotion/demotion situations."

Unlike a defendant in a criminal trial, a prisoner in a disciplinary proceeding has limited due process rights. *See Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) ("prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Where there is a liberty interest at stake, however, such as in disciplinary proceedings where a prisoner is deprived of good-time credits, the inmate is entitled to certain procedural protections. *Id.* Adequate due process protections are afforded a prisoner who may lose good-time credits as a result of disciplinary sanctions when he is given: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). In addition, a disciplinary decision implicating a prisoner's liberty interest must be supported by at least "some evidence." *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774. The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.,* and entitled *Inmate Discipline and Special Housing Units.* These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan,* 855 F.Supp. 1413, 1418 (M. D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not

include the initial day staff learns of the incident, weekends or holidays. 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. *See* 28 C.F.R. § 541.15(k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15.

Downs relies on *Wolff v. McDonnell*, 418 U.S. 539 (1974), to allege that the minimum requirements of procedural due process were not followed by prison staff. Defendant argues, albeit in a somewhat conclusory manner, that Downs's reliance on *Wolff* in this circumstance is misplaced because review by a UDC does not trigger *Wolff* due process protections. Federal prisoners have a liberty interest in their accumulated good-time credits. *See Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). Downs's rule violations were viewed as moderate and were reviewed and adjudicated by the UDC, which found him to have committed prohibited conduct and sanctioned him with the loss of commissary privileges. Because Downs did not lose good time credits, the analysis approved by the Supreme Court in *Wolff* does not govern here.[5]

Downs also appears to claim that sanctioning him with the loss of commissary privileges due to the gambling rule violation and then removing him from his UNICOR job for the same

---

[5] Downs claims that his due process rights were violated because he was not provided with a copy of the charging document within the 24-hour period and he was not brought before the UDC within the 72-hour time limit provided for by BOP regulations. *See* 28 C.F.R. §§ 541.15(a) & (b). Even assuming that the BOP violated the regulations, the agency's failure to comply with its own regulations does not necessarily state a constitutional claim. See *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989) (failure to follow procedural regulations "does not establish a violation of due process, because constitutional *minima* may nevertheless have been met" (internal quotation and citation omitted)). Further, the true measure of whether a due process violation occurred is whether Downs suffered harm or some form of prejudice as a result. *See Von Hahl*, 855 F.Supp. at 1418. Nowhere in his Complaint does Downs argue that he was harmed, prejudiced or otherwise disadvantaged by any alleged delay in receipt of his notice or UDC hearing.

5

adjustment violates the Double Jeopardy Clause because he was already punished for the disciplinary infractions.

The Fifth Amendment states in part that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause protects individuals against three distinct violations: (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794 (1989). Downs relies upon the third of these abuses to argue that prison officials twice punished him for the same offense conduct that formed the basis of the disciplinary sanctions. The Supreme Court has recognized, however, that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance, be described as punishment." *Hudson v. United States,* 522 U.S. 93, 98-99 (1997) (internal quotation omitted)). The Clause protects only against the imposition of multiple criminal punishments for the same offense, *id.* at 99 (quotations omitted), and does not apply to proceedings that are not "essentially criminal." *Breed v. Jones,* 421 U.S. 519, 528 (1975). Prison disciplinary proceedings are not part of a criminal prosecution. *Wolff,* 418 U.S. at 556. Indeed, "prison officials have no authority to alter the inmates' original criminal sentences. They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules." *United States v. Mayes,* 158 F.3d 1215, 1224 (11th Cir. 1998); *see also Fogel v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (disciplinary sanctions do not constitute criminal punishment for double jeopardy purposes). Downs has failed to state a claim under the Double Jeopardy Clause.

Finally, while prison employment may serve an important rehabilitative function, the law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program. *See Moody v. Daggett*, 429 U.S. 78, 88 at n. 9 (1976); (due process clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where prisoner suffers "grievous loss"); *Bulger v. United States Bureau of Prisons,* 65 F.3d 48, 49 (5th Cir. 1995) ("Prisoner classification and eligibility for rehabilitation programs...are not directly subject to 'due process' protections") (citing *Moody, supra.*). Downs had no constitutionally protected liberty interest in his UNICOR position in the FPI Factory; thus, his firing from this job did not demonstrate the violation of a constitutionally protected right, as is necessary to maintain a due process claim. Under the analytical framework which the Supreme Court set out in *Sandin v. Conner,* 515 U.S. 472 (1995), termination from a UNICOR job is not an atypical or significant hardship in relation to the ordinary incidents or prison life, and so no constitutionally protected liberty interest was infringed. *Id*. at 485.

For the aforementioned reasons, Defendant's Motions to Dismiss or, in the Alternative, for Summary Judgment, treated as motions for summary judgment, shall be granted. A separate Order follows.

Date: __April 15, 2011__                                  _____/s/_____
                                                      DEBORAH K. CHASANOW
                                                      United States District Judge